E-FILED
Friday, 27 November, 2020  01:10:22 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| CHRISTIE CLINIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | EQUITABLE RELIEF SOUGHT |
| v. | ) | AND JURY DEMANDED |
| | ) | Case No. |
| JEREMY YOUSE, M.D. and | ) | |
| VITALSKIN MEDICAL GROUP | ) | |
| (IL), PLLC an Illinois limited liability | ) | |
| company and VITALSKIN | ) | |
| PHYSICIAN MANAGEMENT, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff Christie Clinic, LLC ("Christie" or "Plaintiff"), by undersigned counsel, files this Complaint against Defendants Jeremy Youse ("Youse"), VitalSkin Medical Group (IL), PLLC ("VitalSkin IL"), and VitalSkin Physician Management, LLC ("VitalSkin PM") (collectively, "VitalSkin"). In support of its Complaint, Plaintiff states as follows:

### I.  NATURE OF THE COMPLAINT

1.       In this action, Christie seeks to protect itself, and its patients from Defendants' misappropriation and misuse of Christie's trade secrets and patient files, Defendants' unfair competition, and Defendant Youse's breaches of contract. Youse came to Christie in 2011 directly from his residency in dermatology and worked as a Dermatologist and Mohs surgeon for Christie until he left on July 31, 2020.  Youse was elected to shareholder status and signed an agreement to be bound by its Articles of Incorporation and Bylaws on February 25, 2013.  On November 2, 2019,

Youse was also appointed to be Department Chair of Dermatology, further exposing him to Christie's trade secret and confidential information. At the time of his departure, Youse removed some of Christie's trade secret and confidential information and became the founding physician partner in a competing entity, VitalSkin.

2.      At the time he joined Christie, Youse did not have an established medical practice, and 100% of his patients were introduced through Christie's referral network.  Prior to becoming employed as a physician with Christie, Youse signed a Restrictive Covenant in which he promised, among other things: to not take or disclose the confidential information or trade secrets of Christie; to return any of Christie's confidential information in his possession at the time of his termination of employment; to refrain for a period of 24 months from soliciting Christie's patients; and to not compete against Christie Clinic with the restricted area of 35 miles from any of the locations where he practiced medicine for Christie.  While employed by Christie and receiving compensation per his Employment Agreement with Christie, Youse helped to found Defendant VitalSkin to directly compete against Christie. Equipped with Christie's misappropriated trade secret and confidential information containing patient addresses, diagnoses, treatment histories, billing histories, insurance reimbursement information and contractual adjustments, and patient medical records, Youse has now begun to misuse the Confidential Information to unfairly compete and solicit patients within the restricted areas of his Restrictive Covenant, as further described below.  In doing so, Youse breached common law duties, contractual duties, and statutory prohibitions by, among other things:

     a.     copying confidential Christie files related to patients;
     b.     copying confidential Christie files related to its business;
     c.     copying trade secret and/or confidential information for his use on behalf of VitalSkin
     d.     misappropriating Christie documents containing Christie's trade secret and/or confidential information; and
     e.     soliciting Christie patients on behalf of VitalSkin.

2

3.     Youse did not have permission to take Christie's trade secret and confidential information. In fact, despite Christie's initial written notice outlining Youse's post-employment obligations of confidentiality and a subsequent cease and desist letter and demand to return any and all trade secret and confidential information, Youse and VitalSkin have refused to return any of the files, of which Youse is known to be in possession.  The written notices to Youse and VitalSkin are attached as Exhibit A and Exhibit B.  Youse continues to use Christie's trade secret and confidential information and will inevitably use Christie's trade secret and confidential information on behalf of VitalSkin as part of his publicly avowed plan to solicit Christie's customers for VitalSkin, necessitating this legal action and the accompanying Motion for Temporary Restraining Order and Preliminary Injunction.

4.     Youse misappropriated Christie trade secret and confidential information, including patient records in direct violation of his Employment Agreement, Restrictive Covenant and fiduciary duties to Christie, as well as in violation of the federal Defend Trade Secrets Act of 2016 ("the DTSA"), 18 U.S.C. 1836, et seq., and the Illinois Trade Secrets Act ("the ITSA"), 765 ILCS 1065/1 et seq.

5.     Using Christie's confidential information Youse solicited Christie patients on behalf of VitalSkin and, in so doing, tortiously interfered with Christie's business expectancies and contracts with respect to these patients.

6.     Christie seeks all relief available at law and equity, including, but not limited to: (a) a full accounting from Defendants as to the whereabouts of all trade secret and confidential information wrongfully obtained and taken from Christie, (b) the immediate return of all wrongfully obtained trade secret and confidential information belonging to Christie and in their possession, (c) temporary, preliminary, and permanent injunctive relief to restrain Defendants from retaining,

3

disclosing, or using Christie's trade secret and confidential information; (d) temporary, preliminary, and permanent injunctive relief to restrain Youse from breaching his restrictive covenants; and (e) a tolling of the "Restricted Period" in Youse's restrictive covenants, which shall begin when all trade secret and confidential information is returned. Christie requires immediate injunctive relief to protect itself from irreparable injuries cause by the Defendants' misconduct.

7.      Christie seeks an award of compensatory, unjust enrichment, and exemplary damages, and attorneys' fees for Defendants' violations of the DTSA. 18 U.S.C. § 1836, et seq. in excess of $75,000.00.

8.      Christie also seeks an award of compensatory, unjust enrichment, exemplary damages and attorneys' fees for Defendants' violations of the ITSA, 7656 ILCS 1065/1 et seq. in excess of $75,000.00.

## II.      JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. §1331, this Court has subject matter jurisdiction over Christie's claims arising under the DTSA, 18 U.S.C. § 1836, et seq. This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the DTSA as to form part of the same case or controversy.

10.      This Court has personal jurisdiction over Youse. At all times relevant hereto, Youse has resided at 1204 West Armory Street, Champaign, Illinois, which is in within the Central District of Illinois, Urbana Division District and/or has committed tortious acts in this District. Youse's wrongful conduct arises out of and is related to business he has transacted and the tortious acts he has committed in this District.

4

11.     This Court has personal jurisdiction over VitalSkin Physician Management LLC, which has its principal place of business at 1111 West Kenyon Road in Urbana, Illinois.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) since both Youse and VitalSkin reside in the Central District of Illinois, a substantial part of the events or omissions giving rise to the claim occurred in the Central District of Illinois, and a substantial part of the property that is the subject of the action is situated in the Central District of Illinois..

### III. THE PARTIES

13.     Plaintiff Christie Clinic, LLC is an Illinois Limited Liability Company that is headquartered, does business, and has an office at 101 West University Avenue, Champaign, Illinois. Christie is a multi-specialty medical group with 40 departments, 29 locations, and 35 specialties, the largest of which is its dermatology department.

14.     Defendant, Youse is an individual residing in Illinois.  Youse signed an employment agreement with Christie on June 12, 2008 ("Employment Agreement" attached hereto as Exhibit C) and on the same day signed a restrictive covenant agreement ("Restrictive Covenant" attached hereto as Exhibit D).  Youse came to Christie directly from his residency and fellowship in Rochester, Minnesota and accepted employment with Christie as physician in the Dermatology Department, without ever having previously practiced medicine in central Illinois. On July 31, 2020, Youse separated employment with Christie to become a founding partner in VitalSkin.  At the time of his voluntary separation of employment with Christie, Youse was the Chair of the Dermatology Department and was fully paid according to the terms of his Employment Agreement.

15.     Defendant VitalSkin Medical Group (IL), PLLC was registered as a limited liability company with the Illinois Secretary of State on June 4, 2020. Youse is listed on the Illinois Secretary

of State's website as Manager of VitalSkin Medical Group (IL) PLLC, which has as its principal place of business 100 West University Ave Suite 401, Champaign, IL 61820.

16.     VitalSkin Physician Management, LLC is a Delaware company with a place of business at 1111Kenyon Road, Urbana, Illinois.

## IV. FACTS

### A. Christie's Business

17.     Christie is a physician-owned, multispecialty medical clinic that was founded in 1929.  Christie offers 35 medical specialties and 174 medical providers that serve its patients.

18.     Christie maintains 40 different departments and operates at 29 locations, covering an area of approximately 5,000 square miles in east central Illinois, including offices in Champaign and Tuscola, Illinois where Youse practiced during his employment with Christie

19.     Dermatology is one of the largest and highest revenue departments at Christie and on information and belief, its patients remain with the department and seek treatment from providers in the department on average for at least seven years.

### B. Jeremy Youse and VitalSkin

20.     Prior to working for Christie Clinic, Youse completed his residency and fellowship in dermatology at the Mayo Clinic in Rochester, Minnesota in 2011.

21.     When Youse arrived at Christie Clinic, in July of 2011, to begin practicing dermatology he brought no patients with him and joined an existing vibrant dermatology practice within Christie Clinic.

22.     Until July 31, 2020, Youse was employed by Christie Clinic as a physician-shareholder in Christie Business Holding Company, P.C., which is the parent company of Christie Clinic, LLC

6

23.     As of November 17, 2019, Youse became the Chair of the Dermatology Department following the retirement of the department's founder, Lester Fahrner, M.D., who developed the department over the course of thirty years. In his capacity as Chair of the Dermatology Department, Youse's duties generally included: monitoring the financial performance of the department, the productivity of its medical providers, and patient quality of care; liaising with the executive team and human resources; implementing local and regional market strategy for the clinic; and managing overall growth and strategic operations for the department.

24.     According to the website of the Illinois Secretary of State, VitalSkin Medical Group (IL) PLLC was established on June 4, 2020, with Youse listed as its manager and his location listed as 100 West University St., Suite 401, Champaign, Illinois. On June 4, 2020, Youse was employed by, and shareholder in, Christie, and the address listed on the Illinois Secretary of State's website for Youse as manager of VitalSkin Medical Group (IL) PLLC is directly next to at Christie's Champaign, Illinois address located at 101West University Street.

25.     On July 29, 2020. VitalSkin posted an article on its webpage, which stated: "Founding Partner, Jeremy Youse, MD Joins VitalSkin Dermatology in Champaign-Urbana." See, https://www.vitalskinderm.com/2020/07/founding-partner-jeremy-youse-md-joins-vitalskin-dermatology-in-champaign-urbana/ ( Attached hereto as Exhibit "E").

26.     "With the addition of Dr. Youse, the Champaign-Urbana based VitalSkin will be opening its first dermatology clinics in Mattoon and Decatur, IL. The Mattoon clinic will open in December 2020 and the Decatur clinic will open in early 2021. Dr. Youse is accepting appointments for both clinics and will begin seeing patients as soon as the facilities are available," *Id.*

27.     "In the coming years, VitalSkin plans to open a dermatology office at the Kenyon Road location. The newly-remodeled, state-of-the-art dermatology clinic will occupy over 7,000 square feet of the building." *Id.*

28.     On July 31, 2020, Youse's last day as a Christie shareholder, the News Gazette published a full coverage story, in print and online, covering the anticipated opening of the VitalSkin office in Urbana, Illinois and Youse's practice locations in Mattoon and Decatur, IL. (Attached hereto as Exhibit "F").

### C. Christie's Confidential Information and Trade Secrets

29.     Christie has and maintains confidential and trade secret information.  This includes, but is not limited to, private contractually negotiated insurance reimbursement rates; insurance payments; insurance utilization; procedures performed for each patient and the date of the procedure; patient contact information; patient diagnoses; patient files, containing in addition to diagnosis, therapies procedures performed, photographs pre and post procedure; employee performance reviews; employee certifications; employee skills ratings; employee licensing status; and other patient–related, employee-related, vendor-related, and insurance-related information that is not generally known or compiled elsewhere in such useful formats as those found in Christie's files and documents (collectively referred to as "Confidential Information").

30.     Christie makes substantial efforts to protect its Confidential Information, including, but not limited to:

a.     requiring all new employees to execute agreements stating that they will abide by Christie's Confidentiality Policy found in its Employee Handbook;

b.     severely restricting the ability of employees to access, copy, download, transfer, email, and use such Confidential Information during their employment with Christie.  Access to

Christie's Confidential Information is specifically tailored and limited to each employee's level of seniority and job functions. Employees are only given access to the Confidential Information they need to do their specific job. Access to Confidential Information requires passwords; and

      c.      storing such Confidential Information on servers with limited physical and network access.

      31.      Christie's possession of its Confidential Information is the result of substantial effort, knowledge, time, and expense. This Confidential Information is valuable and vital to the success of Christie's business, and Christie derives substantial independent economic value from maintaining the secrecy of its Confidential Information. This Confidential Information is not generally known to Christie's competitors or anyone else who can obtain economic value from its disclosure or use.

      32.      In performing his job duties for Christie, Youse became privy to Christie's Confidential Information, including but not limited to patient medical records, patient lists, insurance carrier information, insurance reimbursement rates for specific procedures, medical provider productivity reports, departmental collections reports, departmental costs and expenses reports, patient payment information, and employee performance reviews and qualifications.

### D. Youse's Employment Agreement and Restrictive Covenant

      33.      Prior to receiving any Confidential Information or providing any medical care to any of Christie's patients, Christie requires physicians to sign his Employment Agreement and Restrictive Covenant that contains non-competition, confidentiality, non-disclosure, and non-solicitation covenants.

34.     On June 12, 2008, prior to beginning his employment with Christie and while still in his residency program at the Mayo Clinic in Rochester, Minnesota, Youse signed his Employment Agreement with Christie. (Exhibit C).

35.     Also on June 12, 2008, Youse signed his Restrictive Covenant (Exhibit D), which is ancillary to the Employment Agreement. The Restrictive Covenant contains a definition of the Christie's Confidential Information, found at Section 5 of the Confidentiality Section of the Restrictive Covenant which for purposes of this Complaint shall also be referred to as "Confidential Information." Section 5 states:

> "I acknowledge and agree that Corporation's confidential information includes not only technical information but generally all information about Corporation's business which is not publicly known. Examples of confidential information include, but are not limited to, information relating marketing and advertising plans, insurance coverage and contracts, sales and promotion plans, production information, cost figures, pricing methods and information, assignments of individual employees, construction plans, special techniques or methods of any kind which are peculiar to Corporation, specific areas of research and development, project work, product development, processing methods, testing and evaluation procedures, inventions, experimental data or results, computer programs, sources of supply, patients, patient's representatives, patient lists, and pricing strategies."

(See, Exhibit "D" attached hereto).

36.     The Restrictive Covenant contains restrictions on the disclosure of Confidential Information, which states:

> "1. Nondisclosure of Confidential Information While Employed. Except for the express written consent of Corporation, I agree:

> a. Not to use or disclose to another person, employee of the Corporation or entity any confidential information of Corporation;
>
> b. Not to make, or cause to be made, any copies, facsimiles or other reproductions of any documents containing confidential information of Corporation; and
>
> c. Not to remove any articles or copies, facsimiles, reproductions or originals of any documents containing confidential information of Corporation from the premises of the Corporation
>
> 2. Nondisclosure of Confidential Information Post-Employment. I further agree, upon the termination of my employment by Corporation or at any time upon the request of Corporation:
>
> b. To refrain from using or disclosing to any other person or entity any confidential information of Corporation."

*Id.*

37. The Restrictive Covenant also contains a provision requiring Youse to return Confidential Information upon the termination of his employment, found in Section 2 of the Restrictive Covenant Agreement, which states that Youse agrees:

> "a. To immediately return to Corporation all of the items in my possession which relate to or which disclose in whole or in part any confidential information of Corporation . . . . "

*Id.*

38. The Restrictive Covenant also includes prohibitions on the solicitation of patients:

> "Non-solicitation of Patients. I agree that during the term of this Agreement and upon the termination of Provider's employment with the Corporation for any reason whatsoever, whether voluntarily or involuntarily, whether before or after the end of the Term and any successive terms:
>
> a. I will not solicit patients, for a period of twenty-four months following the date of such termination (the "Restricted Period"), (1) engage in the practice (as defined below) of medicine, dentistry or podiatry (as defined below) within thirty-five (35) miles of any office from which I, (the "Provider") provides medical services (the "Restricted Area"); and,
>
> b. I will not solicit patients, for a period of twenty-four

11

months following the date of such termination (the "Restricted Period"). For such purposes, the I (sic), (the "Provider") shall be deemed to be "engaged" in the practice of medicine, dentistry or podiatry if the I render medical, dental or podiatric services in the Restricted Area during the Restricted Period, either individually or through an entity in which I am a partner, shareholder, member, director, officer, employee, or consultant."

*Id.*

39.     As set forth in Section 1 of the Restrictive Covenant, the consideration to Youse for agreeing to the restrictive covenants was: (a) employment or continued employment (Youse was employed for nine years after signing the Agreement and the Restrictive Covenant); and (b) continued to have access to Confidential Information as well as access to Christie Clinic's patients.

40.     On or about June 22, 2020, Youse asked to be excused from the restrictions in his Restrictive Covenant and was told in no uncertain terms by Kenneth Bilger, Christie's Chief Executive Officer, that Christie expected Youse to abide by the restrictions in his Restrictive Covenant.

### E. <u>Youse is in Possession of Documents from Patient Files.</u>

41.     On or about October 15, 2020, Christie learned that Youse had the only copy of a patient's pre-surgical photograph, which was critical to the treatment of the patient. The patient was in a treatment room at Christie when the treating physician learned that the only pre-surgical photograph of the patient was not in the file.  A nurse contacted Youse who admitted to having the photograph in his possession and then sent a copy to the nurse.

42.     Despite its best efforts, Christie cannot determine at this time how many other patient photographs and or documents have been removed from patient files by Youse or those working on his behalf.

43.     On October 19, just days after discovering that a Mohs surgery patient's pre-surgery photograph was missing from the patient's file, Christie sent another cease and desist warning letter to Youse.

44.     Other than identifying his legal counsel, Youse did not respond to any of the cease and desist letters from Christie and has not returned any of Christie's confidential information.

### F. Youse Asks for a Detailed Report Containing Christie's Confidential Information and Then Forwards the Report to His Private Email

45.     On October 27, 2020, an internal Christie investigation revealed that on July 17, 2020, Youse requested a detailed report (the "Report") containing patient names, patient addresses, dates of procedure, charges submitted, date and amount collected, contractual insurance adjustments, and insurance carrier. (Attached hereto and as Exhibit "G" is a redacted copy of the Report). The internal investigation also revealed that Youse forwarded the Report to his private email from jyouse@christieclinic.com to jeryouse@gmail.com. (Attached hereto as Exhibit "H" is the email discovered on October 27, 2020).

46.     Amy Evans, who created the report at Youse's request, noted in his email to Lisa Thurber, who relayed the message and the Report to Youse, "Also, please make sure he understands that what he sees here will not match comp.  If he wants comp information, he will need to go to fiscal." (Attached hereto as Exhibit "I")

### G. Youse Solicits Patient Within the Restricted Area on Behalf of VitalSkin.

47.     Youse mailed a solicitation to 2921 Greystone Place, Champaign, IL 61822-6800, which stated, "A Mayo Clinic Trained Dermatologist. Close to Home. Jeremy Youse, MD Fellowship Trained Mohs Surgeon Board Certified Dermatologist. Opening December 2020 Schedule your appointment today! (217) 205-DERM. VitalSkin Dermatology."  The other side of

the solicitation includes an address of "917 Remington Rd., Mattoon, IL 61938." (Attached hereto as Exhibit "J").

48.    The mailed solicitation is address to "postal customer" and appears to be a mass mailing, either targeted by zip code or potentially from a patient contact list.

49.    On or about November 23, 2020, Christie learned that seventy-one (71) patients of the Christie Dermatology Department had requested their files to be transferred to VitalSkin (IL).

50.    The request for transfer of files originated from direct solicitations to individual Christie patients. (Exhibit "K").

51.    The "postal customer" mailing appears to be a cover for targeted patient solicitations made to individual Christie patients using the Report unlawfully retained by Youse.

52.    According to Google Maps, 917 Remington Road is 45.7 miles from Christie location at 101 West University Avenue, Champaign, Illinois where Youse worked on behalf of Christie.

https://www.google.com/maps/dir/Christie+Clinic+on+University,+101+W+University+Ave,+Champaign,+IL+61820/Jeremy+Youse+MD,+917+Remington+Rd+Suite+C,+Mattoon,+IL+61938/@39.8009678,-88.5260191,10z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x880cd74b6e3adbd7:0x68e4e44c04873a6f!2m2!1d-88.2436324!2d40.1154607!1m5!1m1!1s0x887311cf4ca073a9:0x48d0398c442ead45!2m2!1d-88.3336183!2d39.4810586

53.    According to Google Maps, 2921 Greystone Place is 5.6 miles from the same Christie                                                                              location.

https://www.google.com/maps/dir/Christie+Clinic+on+University,+101+W+University+Ave,+Ch

14

ampaign,+IL+61820/2921+Greystone+Place,+Champaign,+IL/@40.0922281,-88.3043049,13z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x880cd74b6e3adbd7:0x68e4e44c04873a6f!2m2!1d-88.2436324!2d40.1154607!1m5!1m1!1s0x880cd1a2d1a05a0f:0xff94669f98ef835b!2m2!1d-88.2943795!2d40.0733772.

54.     While Youse's new office is currently located outside the 35-mile radius restricted area, Youse is currently soliciting well inside the 35-mile radius restricted area using the Report which contains Christie's confidential information.

### COUNT I – ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016 18 U.S.C. § 1836, et seq. (AGAINST YOUSE AND VITALSKIN)

55.     The allegations contained in the paragraphs set forth above are incorporated by reference.

56.     Christie's Confidential Information, including the information outlined in the above paragraphs 47-51, qualifies for protection under the DTSA, 18 U.S.C. §1836, et seq.

57.     Christie derives independent actual and potential economic value from the fact that is Confidential Information is not generally known or readily ascertainable to person outside of Christie.

58.     Christie takes several reasonable steps to ensure the secrecy of its Confidential Information, including but not limited to:

       a.     Requiring all new employees to sign agreements with non-disclosure obligations;

       b.     Limiting access to Confidential Information to only those employees who need the information to perform their job duties and responsibilities;

      c.     Requiring passwords to access Confidential Information on Christie Clinic computers and systems;

      d.     Putting policies in place governing the access and use of Confidential Information, and requiring that employees be trained on such policies and acknowledge their receipt and understanding of such policies on an annual basis.

59.     Youse was given access to Confidential Information constituting "Trade Secrets" as defined in the DTSA.

60.     Youse misappropriated and/ or threatened to misappropriate (as that term is defined in the DTSA) Christie's Confidential Information, including but not limited to patient names and addresses; patient diagnoses; patient treatments and dates; insurance billing and reimbursement rates, and the contents of patient files, all of which is generally not known or compiled elsewhere in such useful formats as those found in Christie's files and documents.

61.     Youse's stated aim of taking patients and employees from Christie to his new corporation places him in a position where he has used and will continue to use Christie's Confidential Information.

62.     Youse knowingly, willfully, and maliciously misappropriated Christie's Confidential Information when he improperly acquired and kept Christie's Confidential Information without the express or implied consent of Christie, and despite his duty to maintain the secrecy of the information.

63.     Youse actually or threatened to knowingly, willfully, and maliciously misappropriate Christie's Confidential Information by improperly using or disclosing Christie's Confidential Information without the express or implied consent of Christie Clinic and despite his duty to maintain the secrecy of the information.

64.     Unless restrained, Youse will use or disclose Christie's Confidential Information to gain an unfair competitive advantage, causing irreparable harm to Christie and it clients for which there is no adequate remedy at law, including the loss of goodwill, loss of client loyalty and business, and the loss of competitive position in the marketplace.

65.     The balance of equities and the public interest weigh in favor of granting Christie injunctive relief.

66.     In addition to injunctive relief, Christie requests compensatory, unjust enrichment, and exemplary damages for misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(B) and attorneys' fees pursuant to 18 U.S.C. §1836 (b)(3)(D).  Youse's actions have injured Christie by reducing the value of the Confidential Information, reducing Christie's competitive advantage and unjustly enriching Youse.

### COUNT II – ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ILLINOIS TRADE SECRETS ACT
### ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1 *et seq.*
### (AGAINST YOUSE AND VITALSKIN)

67.     The allegations contained in the paragraphs set forth above are incorporated by reference.

68.     Christie's Confidential Information, including the information outlined in the above paragraphs, qualifies for protection under the ITSA, 765 ILCS 1065/1 et seq.

69.     Christie derives independent actual and potential economic value from the fact that is Confidential Information is not generally known or readily ascertainable to persons outside of Christie.

70.     Christie takes several reasonable steps to ensure the secrecy of its Confidential Information, including but not limited to:

a.      Requiring all new employees to sign agreements with non-disclosure obligations;

17

b.     Limiting access to Confidential Information to only those employees who need the information to perform their job duties and responsibilities;

c.     Requiring passwords to access Confidential Information on Christie computers and systems;

d.     Putting policies in place governing the access and use of Confidential Information, and requiring that employees be trained on such policies and acknowledge their receipt and understanding of such policies on an annual basis.

71.     Youse was given access to Confidential Information constituting "Trade Secrets" as defined in the ITSA, 765 ILCS 1065/2(d).

72.     Youse misappropriated and/ or threatened to misappropriate (as that term is defined in the DTSA) Christie's Confidential Information, including but not limited to including but not limited to patient names and addresses; patient diagnoses; patient treatments and dates; insurance billing and reimbursement rates, and the contents of patient files, all of which is generally not known or compiled elsewhere in such useful formats as those found in Christie Clinic's files and documents.

73.     Youse's stated aim of taking patients from Christie to his new corporation places him in a position where he has used and will continue to use Christie's Confidential Information and trade secrets.

74.     Youse knowingly, willfully, and maliciously misappropriated Christie's Confidential Information when he improperly acquired and kept Christie's Confidential Information without the express or implied consent of Christie, and despite his duty to maintain the secrecy of the information.

75.     Youse actually or threatened to knowingly, willfully, and maliciously misappropriated Christie's Confidential Information by improperly using or disclosing Christie's Confidential Information without the express or implied consent of Christie and despite his duty to maintain the secrecy of the information.

76.     Unless restrained, Youse will use or disclose Christie's Confidential Information to gain an unfair competitive advantage, causing irreparable harm to Christie and it clients for which there is no adequate remedy at law, including the loss of goodwill, loss of patient loyalty and business, and the loss of competitive position in the marketplace.

77.     The balance of equities and the public interest weigh in favor of granting Christie injunctive relief.

78.     In addition to injunctive relief, Christie requests compensatory, unjust enrichment, and exemplary damages for misappropriation pursuant to 765 ILCS 1065/4 and attorneys' fees pursuant to 765 ILCS 1065/5 (iii).  Youse's actions have injured Christie by reducing the value of the Confidential Information, reducing Christie's competitive advantage and unjustly enriching Youse.

### COUNT III – BREACH OF CONTRACT FOR MISAPPROPRIATION OF CONFIDENTIAL INFORMATION
### (AGAINST DEFENDANT YOUSE)

79.     The allegations contained in the paragraphs set forth above are incorporated by reference.

80.     Youse's Employment Agreement and Restrictive Covenant regarding the maintenance of Confidential Information are valid and enforceable in all respects.

81.     Christie has fully performed every obligation it owes to Youse under the Agreement.

82.     As set forth above in the Section 5 of the Restrictive Covenant, Youse agreed to keep Christie's Confidential Information strictly confidential and to not use it for the benefit of anyone other than Christie.

83.     Youse has violated the Restrictive Covenant by, among other things, his actual or threatened use and/or disclosure of Christie's Confidential Information.

84.     As he acknowledged in the Restrictive Covenant, Christie "has an ongoing continuous relationship with its clientele (medical and dental) patients. I acknowledge and agree that the Corporation has invested a significant amount of time and money in developing its clientele. But for my employment with the Corporation, I would not have the opportunity to develop relationships with certain patients of the Corporation. Prior to my acceptance of employment with Corporation I was not practicing in the restricted geographic area (as defined below in Section: Restrictions 3.a.), which is the geographic area from which the Corporation draws its patients. Consequently, my agreement to abide by the restrictions contained in this Restrictive Covenant will not create an undue hardship or restrict my ability to earn a living.

85.     Unless restrained, Youse will continue to breach his Employment Agreement and Restrictive Covenant, causing continuing and irreparable injury to Christie, including the loss of goodwill, loss of patient loyalty and business, and the loss of competitive position in the marketplace.

86.     The balance of equities and the public interest weigh in favor of granting Christie injunctive relief.

87.     Christie further seeks specific performance of Youse's contractual obligations to return to Christie all property of Christie Clinic in his possession upon termination of his employment with Christie as provided for in Section 2.a. of the Restrictive Covenant.

88.     Christie also requests an order that Defendants each provide a full accounting as to the whereabouts of all Confidential Information, including but not limited to patients' confidential medical files, and the immediate return of all Confidential Information in Youse's or VitalSkin's possession.

## COUNT IV– TORTIOUS INTERFERENCE
## WITH BUSINESS EXPECTANCY AGAINST YOUSE

89.     Christie realleges and incorporates the allegations above as if fully set forth.

90.     Christie has a substantial economic interest in maintaining its relationships with its existing patients and, upon information and belief a reasonable expectation that the patient relationships, which last for at least seven years, will continue.

91.     Youse intentionally engaged in the improper acts alleged and wrongfully interfered with Christie's patient relationships and business expectancies.

92.     Defendants' tortious interference with Christie's existing business relations has caused Christie damages in an amount to be proven at trial.

## COUNT V- BREACH OF CONTRACT FOR SOLICITATION
## OF CHRISTIE'S PATIENTS
## (AGAINST DEFENDANT YOUSE)

93.     The allegations contained in the paragraphs set forth above are incorporated by reference. The Restrictive Covenant prohibits the solicitation of patients and the practice of medicine within the 35 mile Restricted Area is valid and enforceable in all respects.

94.     Christie has fully performed every obligation it owes to Youse under his agreement.

95.     As set forth in the Agreement, Youse agreed to not to use Christie's Confidential Information to solicit any of Christie's patients within the Restricted Area.

96.     Youse violated the Agreement by, among other things, soliciting Christie patients within the Restricted Area.

97.     Christie seeks to recover liquidated damages from Youse for each of the breaches of the non-solicitation and non-competition provisions related to each Christie patient.

## COUNT VI - BREACH OF FIDUCIARY DUTIES
### (AGAINST DEFENDANT YOUSE)

98.     The allegations contained in the paragraphs set forth above are incorporated by reference.

99.     As a shareholder and the Head of the Dermatology Department and an executive level employee of Christie, Youse owed a fiduciary duty of fidelity and loyalty to Christie Clinic, his employer.

100.    Christie entrusted Youse with protecting the best interests of Christie and protecting the confidentiality of information both proprietary to Christie and entrusted to Christie by its clients.

101.    In his employment at Christie, Youse had a duty to maintain the secrecy and confidentiality of sensitive information of Christie and its clients.

102.    By accessing and transmitting Christie's Confidential Information for his own use and/or for his own benefit, Youse breached his fiduciary duties during his employment with Christie.

103.    Christie has been and continues to be harmed by Youse's fiduciary duty breaches. The harm to Christie includes, but is not limited to, the loss of resources expended to investigate and remedy the Youse's unauthorized access and disclosure of confidential information and potential loss of profits, revenue, and patients based on the information disclosed or to be disclosed to VitalSkin and/or to another third party.

104.    Unless restrained, Youse will continue to benefit from the breach of his fiduciary duties, causing continuing and irreparable injury to Christie, including the loss of goodwill, loss of client loyalty and business, and the loss of competitive position in the marketplace.

105.    The balance of equities and the public interest weigh in favor of granting Christie injunctive relief.

106.    Christie also seeks compensatory damages for the loss and damage it has sustained as a direct and proximate result of the wrongful conduct of Youse in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Christie respectfully requests that this Court:

107.    Enter judgment for Christie and against Defendants on each applicable Count of the Complaint;

A.      Temporarily and permanently enjoin Youse from violating his Agreement's confidentiality restrictions, his fiduciary duties, the DTSA, or the ITSA by further accessing, reviewing, disclosing, and/or using any of Christie's Confidential Information; Order that Defendant Youse specifically perform his contractual obligations to return to Christie all property of Christie in his possession or in VitalSkin's possession.

B.      Order Defendant Youse to provide a full accounting as to the whereabouts of all Confidential Information wrongfully obtained from Christie;

C.      Order Defendants Youse and VitalSkin to immediately return all Confidential Information, including client records, in their possession;

D.      Order Defendants Youse and VitalSkin to submit for forensic examination all USB drives or external devices used to transfer or hold any of Christie's Confidential Information;

E.      Order Defendants Youse and VitalSkin to cease and desist from using Christie's confidential information to solicit Christie's customers and employees.

23

F.      Place a constructive trust on all monies paid to Defendant Youse from the time of his breach of fiduciary duty of loyalty to Christie and Order disgorgement to Christie of all such monies paid to Youse.

G.      Order that Defendant Youse cannot participate as a strategic and operational partner in VItalSkin for the Central Illinois Region;

H.      Award Christie compensatory and punitive damages for losses resulting from Youse's tortious interference with contractual relations.

I.      Award Christie compensatory, unjust enrichment, and exemplary damages for losses resulting from Defendants' misappropriation of Christie's Confidential Information in violation of the ITSA, 765 ILCS 1065/3(b) and 4(a).

J.      Award Christie liquidated damages for the losses resulting from Youse's breach of the non-disclosure and non-solicitation covenants of his Agreement.

K.      Award Christie its reasonable costs and attorney's fees incurred in this matter, as provided under the ITSA, 765 ILCS 1065/4(b) and the Agreement.

L.      Grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: November 27, 2020                    Respectfully submitted,


                                            By: /s/ Gregory H. Andrews
                                                Gregory H. Andrews

Gregory H. Andrews
Jeffery L. Rudd
JACKSON LEWIS, P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Email: Gregory.andrews@jacksonlewis.com
(312) 803-2504
Attorneys for Plaintiff

## VERIFICATION BY CERTIFICATION

I, Jason Hirsbrunner, certify under penalty of perjury that the statements set forth in the Verified Complaint for Injunctive and Other Relief are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies that he verily believes the same to be true.

Jason Hirsbrunner

11/25/20

Date

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on November 27, 2020 he caused a true and correct copy of the foregoing **Plaintiff's Verified Complaint** to be filed with the Court by electronic filing protocols. I sent notification of such filing on the following non-ECF participants in the manner shown below:

**VIA E-MAIL:**

Jeremy Youse,
VitalSkin IL, LLC, VitalSkin Medical Group (IL), PLLC
and
VitalSkin Management, LLC
c/o Brian Mead
McDermott,
Will and Emery LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
(bmead@mwe.com)

/s/ Gregory H. Andrews